CRANE v. GRITTON.

1. **Contract**: ESTABLISHMENT OF: EVIDENCE CONSIDERED. Correspondence between the parties in reference to the sale and purchase of certain real estate considered, and held not to establish a contract.

*Appeal from Allamakee District Court.*

SATURDAY, OCTOBER 23.

THE facts as stated by the appellant are, that:

"In July, 1878, the plaintiff sold to the defendant one hundred and twenty acres of land situated in Allamakee county, Iowa. The contract was made in writing and is contained in the correspondence between the parties. This suit is brought to enforce the specific performance thereof, and to establish on the lands a vendor's lien for the purchase-money.

"In his answer the defendant denies that the contract was ever completed, and sets up in avoidance of plaintiff's right to the relief demanded, that plaintiff had no title to part of the land when the contract was made, or within a reasonable time thereafter. The bill was dismissed and plaintiff appeals."

*George Crane, pro se.*

*Dayton & Dayton,* for appellee.

SEEVERS, J.—The material question is whether there was a contract of purchase and sale entered into between the parties. If there was appellant concedes it must appear from the following correspondence between the parties:

"Ion, Iowa, June 27th, 1878.
*"Mr. Crane:*

" I will make you one more offer and see if you are a square man. You said you would account to me for $65 for the rent; that is for the improved. If you will fix up the thing so that I can get possession this fall so I can fence and close off some of the land, I will give you enough now for the land to make you 100. You collect your own rent, that will make the land in 19 $1,735. I had not ought to make such an offer; but if you can get the title all clear in time for me to work on it this fall it will be of some advantage. I would ask you to take $1,000 next spring, int. to commence next spring on the last payment. I guess I would pay you 12 next spring, but would rather not if it is all the same. If you want to do this, before you make the deed let me know, as I want you to make the deed to Hulse of part of that next to him.

A. GRITTON."

"Ion, Iowa, June 10, 1878.
*"Mr. Crane:*

" I received your letter. I think you did not understand my offer just right. I added 35 to the rent to make it 100 you would get. I was to pay no interest until next spring, and then ten per cent on all that was not paid 1st of April. If you conclude to take this I will accept your offer on letting Mr. Collgrove hold the last note until Drum's claim is settled. I saw him, he says if you don't settle soon he won't settle at all, he has saw L. Updegraff, he told him his claim is good. Drum is contrary and likes law, if you conclude to let me have it let me know, and I will get Mr. Dayton to look it over at Waukon; if he considers it all right I will sign the notes to that effect, one of $1,200.00, twelve hundred payable next April, without interest, the other of $535.00, five hundred and thirty-five dollars payable one year from next April, interest to commence next April at 10 per cent until paid. You make me a good deed and take a mortgage.

I saw the recorder; he advised me to have a lawyer to look it up; if the title is all right, my offer will be all right. I am paying too much for the land; on my part I want to do all that is right. You shouldn't think hard of me for wanting a good title, as I am a poor man and dont want law.

"A. GRITTON."

"DUBUQUE, July 12th, 1878.
"*Alexander Gritton, Esq.*,

"DEAR SIR:—Yours of July 10th received. By postponeing our contract till next spring you gain just $105. You have offered to increase your offer $35, leaving the gain to you just $70. I think you ought to increase the $35 to at least $50, that makes it very nearly a splitting of the original difference. I would not figure so closely but our failure to carry out the contract some months ago has put me to a great deal of trouble and inconvenience. I am perfectly willing to leave the last note due in the hands of Mr. Collgrove as my agent; title is made perfectly good, and all taxes paid up. These last I will pay up very soon, and will settle with Drum as soon as he becomes reasonable . *    * . Have to-day sent papers to Mr. Collgrove to complete contract . *    * .

"Yours,        GEORGE CRANE."

"ION, IOWA, August 8, 1878.

"I have delayed somewhat, I have an abstract made out and examined by H. Dayton. His description is that the title is very imperfect; this is the points:

"Sarah Robinson to L. Molony, certificate is assigned without giving description of land No. of certificate. Neither does it appear whether Sarah Robinson had a husband; we suppose that assignment was intended to convey the SE. ¼ of SW. ¼ of section 19, 96, 3, leaves the title imperfect.

"2. There is no patent on record of the S. ½ of SE. ¼ 19.

"3. It does not appear on record in Allamakee county, Iowa, that George Crane is the administrator of the estate of Eugene Shine, deceased.

"4. There is no record of probate of estate of L. Molony, deceased in Allamakee county.

"5. The seal and certificate of the Clerk of Dubuque county does not appear to be attached to the entry order of court made in the cause that was pending in court. This is as the abstract shows. Drum's claim attached with all of this, I will give up the land and have no more to do with it. I have spent money enough to hunt up other folks' deficient titles. I only talked of taking the land if the title was good. I have the abstract showing these to be the facts. The title is so bad that I don't want it at all.        A. GRITTON."

The defendant proposed to purchase the real estate upon the terms stated in his letters. This offer was not unconditionally accepted, but the plaintiff wrote his offer should be increased so as to split the difference between them. A reason was given for figuring thus closely. He also wrote: "Have sent papers to Mr. Collgrove to complete the contract." What contract? The proposition made by the defendant, it is said. But upon what terms was left uncertain. Taking, however, the whole letter together, we think it implies that Collgrove was to negotiate, and if he could do no better, then he was to accept the offer made by the plaintiff.

What Collgrove's instructions in fact were, we are not informed. All he did was to tender the deed made by the plaintiff, and exhibit to the defendant certain papers the former had sent him. Nothing further was done until the defendant, in his letter of August 8th, said: "I will give up the land and have nothing more to do with it." This was a withdrawal of his previous offer, which we construe from the correspondence had not up to that time been unconditionally accepted.

                                                    AFFIRMED.

SUPPLEMENTAL OPINION.

SEEVERS, J.—In a petition for rehearing, our attention is called to a letter written by defendant to plaintiff, under date

of October 29, 1878. The plaintiff insists that the letter shows an acceptance by plaintiff of defendant's proposition. An extract from the letter is set out in the petition for re-hearing with certain words italicised as. follows: "You then wrote me that you had your title all right except Drum's claim. I then wrote you that I would give you so and so if your title was all perfect. You wrote to Collgrove what you would do, and *sent him the deed and notes.* He told me that he had them. I went and *looked at the notes.* Told him *they were all right,* so far as I knew."

In our opinion, this does not show an acceptance by plaintiff. It may be conceded that it shows that the plaintiff sent to Collgrove a deed and notes, which were drawn conformably to the defendant's proposition. But Collgrove was the agent of the plaintiff. A communication to Collgrove was not by itself a communication to the defendant. If the plaintiff had expressly informed Collgrove that he accepted the defendant's proposition, and had expressly instructed him to give notice of his acceptance to the defendant, such fact would not be material unless such notice was given.

The plaintiff claims, as we understand him, that the defendant's letter amounts to an admission that Collgrove did give him such notice. It appears from the letter that Collgrove told the defendant that he had the deed and notes, and that the defendant looked at them, and told Collgrove that they were all right. But what, if anything, Collgrove said about the plaintiff's acceptance of the defendant's proposition is not shown.

Suppose the fact to be, as we think by no means improbable, that Collgrove's instructions were to get, if he could, in cash or by note, the small additional amount insisted upon by plaintiff in his letter of July 12, and not accept the defendant's proposition until he should become satisfied that he could not get any more. There is nothing in the evidence showing that Collgrove was not holding the deed and notes with the hope of getting more, and had not communicated to

the defendant an unqualified acceptance of his proposition. The tender of a deed was made before plaintiff's letter of July 12, and is not relied upon. The burden is upon the plaintiff to show an unqualified acceptance communicated to defendant. We still think that the evidence fails to show it, and that the petition for a rehearing must be overruled.